UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Cyerra R. Springer,

    Plaintiff,

v.                                                             Civil Action No. 17-11413

Megan Brennan, Postmaster            Sean F. Cox
General of United States,               United States District Court Judge

    Defendant.
_____/

**OPINION & ORDER
GRANTING IN PART AND DENYING IN PART
PLAINTIFF'S MOTION TO AMEND**

Plaintiff Cyerra R. Springer ("Plaintiff") is an employee of the United States Postal Service. Plaintiff brought this action against Defendant Megan Brennan, Postmaster General of the United States, asserting that she was discriminated against based upon her race and light-skinned complexion, and her gender, in violation of Title VII, and faced a hostile work environment, and that she was retaliated against for having asserted her rights under Title VII.

The matter is currently before the Court on Plaintiff's motion – filed nearly a full year after she filed this action – seeking leave to file an amended complaint. In her proposed First Amended Complaint, Plaintiff would add two new counts: 1) a count to clarify that her gender harassment claim includes a claim for sexual harassment (her proposed Count VI); and 2) an assault claim against a new Defendant, Post Office Manager Jeanette Powell (her proposed Count VII). The Government only opposes the motion to the extent that it adds an assault claim. The parties have briefed the issues and the Court heard oral argument on June 26, 2018. For the

1

reasons set forth below, the Court shall GRANT THE MOTION IN PART AND DENY IT IN PART. The Court shall GRANT the motion to the extent that it will grant Plaintiff leave to file an amended complaint in order to assert her proposed Count VI. The Court shall DENY Plaintiff's request to assert an assault claim in this action because: 1) Plaintiff unreasonably delayed bringing this claim, as she was aware of the basis of it when she filed her original suit and waited two full months after her own deposition before seeking to add a new party to this case; 2) the assault claim is futile as to Powell in her individual capacity because she was acting within the scope of her federal employment and she is therefore immune under the Westfall Act, which would require any claim, if one can be brought, to be brought against the United States; and 3) amendment to assert an assault claim against the United States, or against Powell in her official capacity, would be futile because the Federal Tort Claims Act excepts assault claims from coverage.

## BACKGROUND

Plaintiff is an employee of the United States Postal Service. On May 3, 2017, Plaintiff brought this action against Defendant Megan Brennan, Postmaster General of the United States, asserting that she was discriminated against based upon her race and light-skinned complexion, and her gender, in violation of Title VII, and faced a hostile work environment, and that she was retaliated against for having asserted her rights under Title VII.

The Scheduling Order in this matter provides that discovery closed on May 4, 2018, and that dispositive motions were due by June 18, 2018.[1]

On February 21, 2018, Plaintiff's deposition was taken. Plaintiff's Counsel asserts that

---

[1] The Government filed a Motion for Summary Judgment on June 18, 2018.

"[d]uring her deposition, Plaintiff testified to events that amount to assault" by Jeanette Powell while the two women were working at the post office. (Pl.'s Br. at 2). The relevant portion of Plaintiff's deposition testimony is as follows:

> And so I'm walking over there. And I see Jeanette at the supervisor desk. And when I saw her I sped up because I didn't want her to say anything to me. And she called my name. And I ignored her. And then she called it again. And I turned around. And she said, are you working over here. And, you know, she put me over here, you know, I'm working over here. And I said yes. And I continued to walk.
> And then she called me again. She said, I need to assign you to a machine. And I said, you know, I've already got an assignment. I kept walking. And that's when she stopped me. She got very irate. And she said, you need to wait a minute. Ryan is below me. I'm in charge. And she's jumping her hands at me. And like her head is just moving up and down and she's stepping towards me. I backed up. I wouldn't look at her because I thought I was going to be attacked . . .
> And she did this on several occasions. She was very irate. She was very con– every conversation was very confrontational. I thought, you know, I was scared.
> Q. When you say she was jumping her hands at you what do you mean?
> A. Like she was like jumping like.
> Q. So you're moving your arms up and down?
> A. Yeah. Like if you were, if you were in public and you saw someone yelling at you, swearing at you and jumping you in this way, you would probably get ready to defend yourself and call the police.
> Q. Was she raising her arms in any way?
> A. No. They were just probably stayed, probably reached her face, if anything.
> Q. Did she ball up her fists?
> A. Not that I can recall.
> Q. Did she draw back like she was getting ready to hit you?
> A. Not that – her arms were moving back but she – not that – not a particular draw back like I was going to be struck.
> Q. Did she say anything to you physically threatening? Like I'll kick your ass, I'm about to hit you, anything that made you think she was about to engage in physical contact?
> A. No. It was only her body language. She was yelling and swearing at me about the job. But she was – her body language showed that she was getting ready to fight me.
> . . . .

3

> Q. Did she ever make physical contact with you?
> A. Like?
> Q. Did she touch you in any way? Did she physically contact you?
> A. No.
> Q. Did she ever physically threaten you, by verbally?
> A. No, not verbally saying, you know, like you said, I'm going to kick your ass, no.

(Pl.'s Dep. at 88-90 & 109).

Plaintiff's Counsel states that, after the February 21, 2018 deposition ended, she notified defense counsel that she would be amending the complaint to add an assault claim against Powell. (*Id*. at 3). She states that she "indicated that the amendment would not take place until after the deposition transcript was received to assure accurately updated facts." (*Id*.).

Notably, however, Plaintiff's May 3, 2017 original complaint already contained a general version of the factual allegations to which she testified to during her deposition and even used the word "assault" to describe Powell's conduct towards her:

> 30. Powell verbally reprimanded and *assaulted* Plaintiff, "Cyerra this is unacceptable! It should not have taken you guys this f***ing long to finish second pass and a carrier route. Pull this s**t down now?" Powell stood over Plaintiff and her partner yelling, cussing, blaming and then demanding that they work faster.
>
> 31. *Plaintiff was so intimidated by Powell's yelling, profanity and gestures* that Plaintiff could not speak and *sometimes would have to walk backwards for fear of injury*.

(Pl.'s Original Compl. at ¶¶ 30-31) (emphasis added).

Two full months after Plaintiff's deposition, and just two weeks prior to the close of discovery, on April 20, 2018, Plaintiff filed a motion seeking leave to file a First Amended Complaint. In it, Plaintiff seeks to: 1) clarify that her gender harassment claim includes a claim for sexual harassment, which is her proposed Count VI; and 2) add an assault claim against a

new Defendant, Post Officer Manager Jeanette Powell, her proposed Count VII.

Plaintiff's proposed First Amended Complaint adds Powell as a Defendant and names her in both her official and individual capacity. (*See* caption of proposed First Amended Complaint).

The only count asserted against Powell is Count VII, the assault count, and it is asserted against Powell alone. In it, Plaintiff alleges that:

> 169. On multiple occasions during Plaintiff's employment with Defendant Brennan, Defendant Powell assaulted Plaintiff.
> 170. Defendant Powell made intentional and unlawful threats of harm to Plaintiff by jumping at Plaintiff; waiving her arms toward Plaintiff; moving her head up and down; and stepping towards Plaintiff in a threatening manner.
> 171. Although these actions were taken during the work day, Defendant Powell was outside of her authority when threatening to physically harm Defendant Brennan's employees.
> 172. Plaintiff would make every effort to avoid Powell, to no avail. Defendant Powell would follow Plaintiff throughout the facility and would stop Plaintiff when Plaintiff would try to walk away.
> 173. Defendant Powell's threatening behavior and demeanor created in Plaintiff a well-founded fear of imminent danger.
> 174. Further, Defendant Powell's insistence on following Plaintiff around the facility increased Plaintiff's fear that Defendant Powell was going to harm her.
> 175. Defendant had the apparent ability to carry out the act of violently attacking Plaintiff.
> 176. As a direct and proximate result of Defendant's actions against Plaintiff as described, Plaintiff has suffered injuries and damages, including, but not limited to, potential loss of earnings and earning capacity; loss of career opportunities; loss of professional reputation and esteem in the community; mental and emotional distress; and loss of the ordinary pleasures of life.

(Proposed First Am. Compl. at 18). The general factual allegations in Plaintiff's proposed First Amended Complaint include the following:

> 33. Powell verbally reprimanded and assaulted Plaintiff, "Cyerra this is unacceptable! It should not have taken you guys this f***ing long to

> > finish second pass and a carrier route.  Pull this s**t down now!  Powell stood over Plaintiff and her partner yelling, cussing, blaming and then demanding that they work faster.
> > 34. Plaintiff was so intimidated by Powell's yelling, profanity and gestures that Plaintiff could not speak and sometimes would have to walk backwards for fear of injury.
> >
> > . . . .
> > 38. Defendant Powell then stopped Plaintiff from walking and became very irate.  During this confrontation, Defendant Powell informed Plaintiff that Powell was in charge while jumping and throwing her hands around in Plaintiff's direction; moving her head up and down; stepping towards Plaintiff in a threatening manner.
> > 39. Fearful, Plaintiff backed away twice from within Defendant Powell's reach.
> > 40. Plaintiff was even afraid to look directly at Defendant Powell because she thought she was going to be attacked.
> > 41. Most notably, Defendant Powell has behaved in a threatening manner towards Plaintiff on more than one occasion.
> > 42. On each of these occasions, Plaintiff was afraid.

(*Id.* at 5-6).

The Government's response brief indicates that it does not oppose Plaintiff adding Count VI.  But the Government opposes adding an assault claim for several reasons.  It opposes the assault claim against Defendant Powell because it contends that the proper defendant for any tort claim arising from the acts of a federal employee acting within the scope of employment is the United States.  (Def.'s Resp. Br.).  It further asserts that assault claim would have to be against the United States, not Powell, but that the claim cannot be asserted against the Government because it has not waived sovereign immunity for claims of assault.  The Government further asserts that Plaintiff unreasonably delayed adding Powell as a Defendant in this case and that the Court should decline to exercise supplemental jurisdiction over her state-law assault claim, and that Plaintiff has not alleged a viable assault claim under Michigan law in any event.  It therefore asks the Court to deny the request to add the assault count.

6

## ANALYSIS

Rule 15 of the Federal Rules of Civil Procedure governs the filing of amended complaints and provides that, at this stage of the litigation, Plaintiff may amend her complaint only with the opposing party's written consent or this Court's leave. FED. R. CIV. P. 15(a). Because Plaintiff's motion is opposed as to the assault claim against Powell, she must obtain leave of this Court in order to amend her complaint to add that claim.

The decision as to whether justice requires the amendment is committed to the district court's sound discretion. *Zenith Radio Corp. v. Hazeltine Research, Inc.,* 401 U.S. 321, 330 (1971). Abuse of that discretion occurs when a district court fails to state the basis for its denial or fails to consider the competing interests of the parties and likelihood of prejudice to the opponent. *Foman v. Davis*, 371 U.S. 178, 182 (1962).

Reasons that warrant denying a motion for leave to amend include "undue delay, bad faith, or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of the amendment." *Id.* at 182.

Where, as here, "amendment is sought at a late stage in the litigation, there is an increased burden to show justification for failing to move earlier." *Wade v. Knoxville Util. Bd.*, 259 F.3d 452, 459 (6th Cir. 2001). And "[t]he longer the delay, the less prejudice the opposing party will be required to show." *Dubac v. Green Oak Twp.*, 312 F.3d 736, 752 (6th Cir. 2002) (citing *Phelps v. McClellan*, 30 F.3d 658, 662 (6th Cir. 1994)).

The Government contends that the Court should deny the motion, and not allow Plaintiff to assert an assault claim in this action, for several reasons.

7

**I.     Plaintiff Unreasonably Delayed Bringing This Claim, As She Was Aware Of The Basis Of It When She Filed Her Original Complaint, And Waited Two Full Months After Her Own Deposition Before Seeking To Add A New Party To This Case.**

In her Motion to Amend, Plaintiff asserts that her proposed assault claim against Powell "only became apparent through Plaintiff's deposition testimony." (Pl.'s Br. at 5). Plaintiff asserts that adding the assault claim against Powell "will not prejudice the current Defendant in this matter or require this Court to adjust its scheduled filing deadlines and trial schedule." (*Id.*).

The Government asserts that it simply not the case and explains that "[i]f Plaintiff is permitted to add Powell as a new party, Powell is required to be served with the complaint, have time to answer, obtain counsel, and conduct discovery on her own behalf. Powell would be required to have the opportunity to defend herself, and would not be represented by the U.S. Attorney's Office. Therefore, this litigation would have to essentially begin anew as to Powell, substantially delaying all of the long-standing dates set by the Court and prejudicing Defendant in significantly extending resolution of this action." (Def.'s Br. at 10-11). The Government also notes that "Plaintiff does not offer any justification for delaying until the close of discovery adding a new party based on conduct that was known to Plaintiff before she filed her complaint." (*Id.*).

The Court shall deny leave to assert an assault claim against Powell at this late stage of the case, nearly a full year after Plaintiff filed this action.

This is not a situation where the plaintiff is claiming to have learned of the factual basis of this claim against Powell from the testimony of another witness, or through some other discovery received from the opposing party. Rather, Plaintiff claims to have learned of the factual basis of this claim through her *own deposition testimony*. Plaintiff's Counsel obviously

8

had access to their own client prior to filing this action.

Moreover, by all accounts Plaintiff and Plaintiff's Counsel *were aware* of the factual basis for this claim when the original complaint was filed. Plaintiff's May 3, 2017 original complaint already contained a general version of the factual allegations to which Plaintiff testified to during her deposition and even used the word "assault" to describe Powell's conduct towards Plaintiff:

> 30. Powell verbally reprimanded and *assaulted* Plaintiff, "Cyerra this is unacceptable! It should not have taken you guys this f***ing long to finish second pass and a carrier route. Pull this s**t down now?" Powell stood over Plaintiff and her partner yelling, cussing, blaming and then demanding that they work faster.
>
> 31. *Plaintiff was so intimidated by Powell's yelling, profanity and gestures* that Plaintiff could not speak and *sometimes would have to walk backwards for fear of injury*.

(Pl.'s Original Compl. at ¶¶ 30-31) (emphasis added).

In addition, even if it were true that Plaintiff's Counsel first learned of the factual basis for this claim during Plaintiff's February 20, 2018 deposition, Plaintiff's Counsel waited *two full months* after Plaintiff's deposition before seeking leave to file an amended complaint bringing in an entirely new Defendant, filing it just two weeks prior to the discovery cutoff.[2]

As such, the Court concludes that leave to add this claim should be denied because Plaintiff unreasonably delayed seeking leave to add the assault claim.

---

[2]Furthermore, Plaintiff's assault claim against Powell in her individual capacity would be a state-law claim, and this Court would not be inclined to exercise supplemental jurisdiction over that state-law claim under the circumstances presented here.

9

**II.  In Addition, The Proposed Claim Is Futile Because Powell Was A Federal Employee Acting Within The Scope Of Her Employment, So Any Claim Would Have To Be Brought Against The United States, But The Government Has Sovereign Immunity As To Assault Claims.**

The Government further asserts that "[b]ecause Powell was a federal employee acting within the scope of her employment when she spoke to Plaintiff, the proper defendant is the United States pursuant to the Federal Tort Claims Act" but the request to amend is "futile because the United States is immune from claims of assault arising from conduct of federal employees acting within the scope of their employment." (Def.'s Br. at 1). This is a two part argument: 1) Powell is immune under the Westfall Act, because she was a federal employee acting within the scope of her employment, and therefore the only proper Defendant would be the United States Government; and 2) even with substitution, the assault claim is futile because the Federal Tort Claims Act contains an exception for assault claims.

**A.  Powell Is Immune From Liability Under The Westfall Act, So Any Claim Against Her Could Only Be Brought Against The United States.**

The Sixth Circuit has explained that the Federal Employees Liability Reform and Tort Compensation Act of 1988, 28 U.S.C. § 2679 (the "Westfall Act") "immunizes federal employees from liability for torts they commit when acting within the scope of their federal employment. 28 U.S.C. § 2679(b)(1). *Rector v. United States*, 243 F. App'x 976, 978 (2007). "When a federal employee commits a tort while acting within the scope of his employment, any private remedy for the tort must be sought against the United States under the Federal Tort Claims Act, 28 U.S.C. §§ 2671-2680." *Id.* Only when the federal employee acts outside of the scope of employment can a private tort action be brought against the employee. *Id*.

Thus, under the Westfall Act, the United States may be substituted in a civil action for

money damages brought against a federal employee who is alleged to have committed a common law tort while acting within the scope of his or her employment. *RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1142 (6th Cir. 1996). The Westfall Act provides, in pertinent part that:

> (d)(1) Upon certification by the Attorney General that the defendant employee was acting within the scope of his office or employment at the time of the incident out of which the claim arose, any civil action or proceedings commenced upon such claims in a United States district court shall be deemed an action against the United States under the provisions of this title and all references thereto, and the United States shall be substituted as the party defendant.

28 U.S.C. § 2679 (d)(1).

Here, the Government contends that "Powell was acting within the scope of her employment as Plaintiff's supervisor when she allegedly used the confrontationl style that Plaintiff claims amounted to assault." (Def.'s Br. at 5). It has provided a "Certification of Scope of Employment" that states that:

> Pursuant to 28 U.S.C. § 2679, as amended by Public Law 100-694, and by virtue of the authority vested in the United States Attorney for the Eastern District of Michigan by the Attorney General under 28 U.S.C. § 510 and 28 C.F.R. § 15.3 re-delegated to me by the administrative directive fo the United States Attorney, I hereby certify that:
>
> 1.     I have read the proposed complaint in this action.
>
> 2.     On the basis of the information now available with respect to the allegations made in the proposed complaint, and pursuant to 28 U.S.C. § 2671 and 42 U.S.C. § 233(c), I find that Jeanette Powell was acting within the course and scope of her employment as an employee of the United States Postal Service at the time of the conduct alleged in the proposed amended complaint.

(D.E. N o. 17-2). That certification is signed by Peter Caplan, Chief of the Civil Division, Office of the U.S. Attorney, Eastern District of Michigan.

11

Such a certification is "conclusive for purposes of removal" (which is not an issue here given that this case was filed in federal court), but "rebuttable for purposes of defendant substitution." *Rector,* 243 F. App'x at 978 (citing *Arbour v. Jenkins*, 903 F.2d 416, 421 (6th Cir. 1990)). That is, a plaintiff can judicially challenge the certification.

But the certification "provides *prima facie* evidence that the employee was acting within the scope of employment." *Singleton*, 277 F.3d 864, 870 (6th Cir. 2002). "Thus, to contest the propriety of substitution, the plaintiff must *produce evidence* that demonstrates that the employee was not acting in the scope of employment. If the plaintiff produces such evidence, the government must then produce evidentiary support for its certification." *Id*. at 871 (emphasis added).

Whether a federal employee was "acting within the scope of his employment is a question of law, not fact, made in accordance with the law of the state where the conduct occurred." *Singleton*, 277 F.3d 864, 870 (6th Cir. 2002). So, for example, in *Rector*, the Court discussed Michigan law on this issue:

> Under Michigan law, a person acts within the scope of employment if he is acting "while engaged in the service of his master, or while about his master's business." *Barnes v. Mitchell,* 341 Mich. 7, 67 N.W.2d 208, 210 (1954) (quoting *Riley v. Roach,* 168 Mich. 294, 134 N.W. 14, 19 (1912)). The crucial "question is whether the employee's actions are within his authority." *Arbour,* 903 F.2d at 422 (citations omitted) (interpreting Michigan law). The course of employment includes acts "undertaken in furtherance of the employer's purpose." *Backus v. Kauffman,* 238 Mich.App. 402, 605 N.W.2d 690, 693–94 (1999). This is true "even if the actions constitute intentional torts," *Arbour,* 903 F.2d at 422 (citations omitted), or disobedience of the employer's "express orders or implied orders." *Barnes,* 67 N.W.2d at 210 (quoting *Chicago & N.W. Ry. Co. v. Bayfield,* 37 Mich. 205, 212 (1877)).

*Rector*, 243 F. App'x at 979.

Here, the Government's Response Brief asserts that, under Michigan law, Powell was

12

acting within the scope of her federal employment, stating:

> "A determination of whether an employee was acting within the scope of employment is a question of law, not fact, made in accordance with the law of the state where the conduct occurred." *Henson v. Nat'l Aeronautics & Space Admin.*, 14 F.3d 1143, 1147 (6th Cir. 1994). "[U]nder Michigan law an employee is acting within the scope of his employment if he is engaged in the service of his master." *Arbour v. Jenkins*, 903 F.2d 416, 422 (6th Cir. 1990). "[A]n employee's actions may be within the scope of his or her employment even if the actions constitute intentional torts." *Id*. "[A]n employee who acts in furtherance of his employer's interests 'may be within the scope of his employment even though, at the same time, he is doing something to serve a purpose of his own.'" *Id*. (citation omitted). "Furthermore, verbal harassment and intimidation have been viewed as being within the scope of supervisory employment." *Id*. (citations omitted). *See also RMI Titanium*, 78 F.3d at 1143-44 (the fact that "a federal employee's actions may have been unlawful…is not enough, by itself, to find that the employee's actions were outside his authority.").

Per the Court's guidelines, highlighted copies of *RMI Titanium* and *Arbour* are attached as Exhibit 3 as the most controlling cases.

All of the confrontational conversations Plaintiff alleges were related to Plaintiff's employment, such as dress code, productivity, scheduling, light duty assignments, overtime, etc. (Compl., Dkt. #1). What Plaintiff really asserts is that Powell had a personal motive for enforcing rules against Plaintiff that she did not enforce as frequently against other employees; not that she was without authority to enforce rules against Plaintiff. *Id*. The "crucial question" for determining scope of employment is "whether the employee's actions are within his authority." *Rector v. United States*, 243 Fed. Appx. 976, 979 (6th Cir. 2007).

As a supervisor, Powell had the authority to enforce Defendant's rules against any subordinate employee. Any personal motive Plaintiff claims Powell had for doing so is immaterial to whether she acted within the scope of her authority. *See RMI Titanium*, 78 F.3d at 1143-44 ("Where, as here, a plaintiff in his complaint pleads conduct within an individual's scope of employment and merely alleges bad or personal motive, summary dismissal of the scope challenge is warranted."). In *Arbour v. Jenkins*, 903 F.2d 416, 417 (6th Cir. 1990), the plaintiff alleged that supervisors acted outside the scope of their authority when they allegedly harassed her husband by imposing unfair discipline. The court held that as to the discipline imposed by his supervisors it was "within the employees' scope of authority." *Id*. at 422. The court noted that "under the 'dual purpose' doctrine, an employee who acts in furtherance of his employer's interests 'may be within the scope of his employment even though, at the same time, he is doing something to serve a purpose of his own.'" *Id*. The court also noted that, *"verbal harassment and intimidation have been viewed as being within the scope of supervisory employment." Id.*

13

(Def.'s Br. at 5-7) (emphasis added). The Government therefore contends that, even if Plaintiff's testimony regarding Powell's confrontation style is accepted as true, Powell was still acting within the scope of her employment.

"[W]hen a district court is reviewing a certification question under the Westfall Act, it must identify and resolve disputed issues of fact necessary to its decision before entering its order." *Id*. at 870. A district court "may hold an evidentiary hearing, if necessary." *Dolan v. United States*, 514 F.3d 587, 593 (6th Cir. 2008). Plaintiff suggests an evidentiary hearing may be necessary here, but that is not the case as the Government is assuming for the sake of argument that Plaintiff's testimony concerning Powell is true.

In her Reply Brief, Plaintiff challenges the certification. Plaintiff's brief, however, does not direct the Court to any Michigan case law that would support her position that Powell was not acting within the scope of her employment during the alleged conversations about work related-issues, between a supervisor and subordinate, that occurred at the work site during work hours. Rather, Plaintiff's Counsel directs the Court to Powell's testimony wherein she testified that the Post Office does not give her "permission to threaten people." (Pl.'s Reply Br. at 2). Without citation to any on-point cases, Plaintiff's Counsel then asserts that "threatening an employee – through words or actions – is outside of a federal employee/manager's job duties. Powell threatened Plaintiff – jumping at her, throwing her arms up and down, yelling, cursing – causing Plaintiff to back away to keep from being hit." (*Id.* at 2-3).

This Court concludes that under Michigan law, Powell's alleged actions (yelling at a subordinate regarding her job duties in a confrontational manner, while on the job site) were

14

taken within the scope of her employment. *Rector*, 243 F. App'x at 979; *RMI Tianium*, 78 F.3d at 1143-44; *Arbour v. Jenkins*, 903 F.2d at 422. As such, Powell is immune from this assault claim and it could only be brought, if at all, against the United States. Thus, to the extent that Plaintiff seeks to assert this claim against Powell in her individual capacity, that claim is futile.

> **B.** **Amendment To Substitute The United States As The Defendant In Place Of Powell Would Be Futile Because Assault Claims Fall Within A Statutory Exception Of The Federal Tort Claims Act.**

Although the United States would be the only proper Defendant for Plaintiff's assault claim, the Government asserts that such amendment would be futile here, given the alleged tort. The Court agrees. That is because the Federal Tort Claims Act excepts many torts, including assault, from coverage. *See* U.S.C. § 2680(h) (listing exceptions, which include "[a]ny claim arising out of assault"). And as the Government notes, "[i]f a case falls within the statutory exceptions of 28 U.S.C. § 2680, the court lacks subject matter jurisdiction." *Feyers v. United States*, 749 F.2d 1222, 1225 (6th Cir. 1984). Accordingly, amendment to assert an assault claim against the United States, or against Powell in her official capacity, would be futile.

## CONCLUSION & ORDER

For the reasons set forth above, IT IS ORDERED that Plaintiff's Motion to Amend is GRANTED IN PART AND DENIED IN PART. The motion is GRANTED to the extent that the Court ORDERS that Plaintiff may file an amended complaint in order to add her proposed Count

VI within ten (10) days of this order. The motion is DENIED in all other respects.

    IT IS SO ORDERED.

                                                    s/Sean F. Cox
                                                    Sean F. Cox
                                                    United States District Judge

Dated: July 3, 2018


I hereby certify that a copy of the foregoing document was served upon counsel of record on July 3, 2018, by electronic and/or ordinary mail.

                                        s/Jennifer McCoy
                                        Case Manager